IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARLA ELLIS,<br>        Plaintiff<br><br>        v.<br><br>HARRISBURG AREA COMMUNITY COLLEGE;<br>THOMAS DICK, individually and in his capacity as Director of Student Account and Cashiering for Harrisburg Area Community College; MEREDITH TULLI, individually and in her capacity as Human Resources Director for Harrisburg Area Community College, and BARBARA L. HUTCHINSON, individually and in her capacity as Controller for Harrisburg Area Community College<br>        Defendants. | : <br>: <br>: CIVIL ACTION NO. 1:05-CV-02466-YK<br>: <br>: <br>: Filed Electronically<br>: <br>: <br>: Honorable Yvette Kane<br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: <br>: |

### **PLAINTIFF'S COUNTERSTATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGEMENT**

Pursuant to F.R.C.P. 56 and Middle District Local Rule 56.1, Plaintiff, Darla Ellis, hereby submits the following Counterstatement of Undisputed Facts in Opposition to Defendants' Motion for Partial Summary Judgment:

**Background**

1. Plaintiff admits that she is an African American female.

2. Plaintiff admits that she was previously employed by Harrisburg Area Community College ("HACC") as an Accounting Clerk in the Student Accounts and Cashiering Services Department of HACC's Harrisburg campus during the time period June 1998 through and including August 25, 2003.

1

3. Plaintiff disputes the facts contained in this paragraph as stated. Plaintiff admits that as an Accounting Clerk, she was responsible for maintaining the student loan deferred payment plan for students attending all of HACC's campuses, including the Harrisburg Campus. However, Darla Ellis' job responsibilities were much more expansive and included responsibilities for short-term loans and other responsibilities and duties that are enumerated in greater detail in Deposition Exhibit #1 and submitted herewith as Exhibit "J." (Deposition Testimony of Thomas Dick I, p. 16, lines 8-15). Additionally, Plaintiff regularly assisted other employees with their workload, including assisting another employee, Cheri Houston, with her duties handling vendor accounts. (Deposition Testimony of Cheri Houston, p. 11-12, lines 1-25; 1-19).

4. It is admitted that Plaintiff was enrolled as a student at HACC during some portion of her employment.

**Finance Department Policy Concerning Scheduling Day Classes**

5. It is admitted that Barbara Hutchinson, implemented a policy in or around 2000 that prohibited employees in the Finance Department from enrolling in or attending classes that conflicted with their daily work schedules. Ms. Hutchinson viewed the unfavorable reaction to her policy personally, noting that "they all hated me." (Deposition Testimony of Barbara Hutchinson, p. 27).

6. It is admitted that as a part of this policy, no Finance Department employees were supposed to be permitted to schedule or attend classes during their lunch hour. However, there is a material question of fact as to whether other Finance

employees were permitted to schedule or attend classes during their lunch hour, despite the policy. (Deposition Testimony of Darla Ellis, p. 17-18, lines, 21-1).

7. It is admitted that Ms. Ellis was aware of the Finance Department's policy prohibiting enrollment or attendance classes during the day after a memorandum was issued to that effect prior to February 1, 2002.

8. It is a disputed question of fact as to whether Darla Ellis was aware that she was not permitted to take classes during the day at the time she registered to do so. Ms. Hutchinson specifically could not provide any time frame with the respect to the implementation of her policy and provided no basis upon which she could conclude that the Plaintiff knew of the policy prior to registering for classes. (Deposition Testimony of Barbara Hutchinson, p. 27, lines 4-8). Additionally, Darla Ellis specifically testified that she was not allowed to take the classes despite being told at the time of her interview that she could do so. (Deposition Testimony of Darla Ellis, p. 17, lines 1-4).

9. It is admitted that Darla Ellis was verbally reprimanded by Thomas Dick for attempting to register for a class during the day without his approval.

**Plaintiff's First PHRC Complaint**

10. It is admitted that Darla Ellis filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") on or about January 15, 2003, that was simultaneously filed with the Equal Employment Opportunity Commission ("EEOC").

11. It is admitted that in her PHRC Complaint, Ms. Ellis alleged that she was denied the opportunity to attend courses during the work day because of her race.

12. It is admitted that the PHRC issued a finding of no probable cause concerning the allegations in Plaintiff's PHRC Complaint. Furthermore, each of the Defendants was aware of Plaintiff's filing of her PHRC/EEOC Complaints and the PHRC's issuance of a finding of no probable cause. (Deposition Testimony of Thomas Dick I, p.44, lines 5-10; Deposition Testimony of Thomas Dick I, p. 47, lines 14-17; Deposition Testimony of Meredith Tulli, p. 31, lines 20-25; Deposition Testimony of Meredith Tulli, p. 95, lines 5-10; Deposition Testimony of Barbara Hutchinson, p. 26, lines 1-5; Deposition Testimony of Barbara Hutchinson, pgs. 28-29, lines 23-5).

**Plan to Decentralize Administration of Monthly Payment Plan**

13. The facts stated in Defendants statement of this paragraph are denied as stated and raise a genuine issue of material fact. In fact, Ms. Tulli and Mr. Dick testified only that around October 2002 the deans of the Lancaster and Lebanon campuses advised that they wanted to be able to track and process the plans that were being administered for their students at their individual campuses. (Deposition Testimony of Meredith Tulli, p. 74, lines 18-23; Deposition Testimony of Thomas Dick I, p. 33, lines 1-8). There was no comprehensive "decentralization" plan at that time, but rather, plans to decentralize evolved over the course of a year (Deposition Testimony of Thomas Dick I, p. 38, lines 12-14).

14. It is admitted that a plan evolved, subject to which each of HACC's several campuses would assume responsibilities for processing the deferred student loan program for and on behalf of their own respective students.

15. It is denied that the proposed decentralization plan entailed the elimination of Plaintiff's Accounting Clerk position. The decision to eliminate Darla Ellis' position had not been proposed by anyone until Defendant, Thomas Dick, came to that decision in late June or July of 2003, within weeks of the PHRC's finding of no probable cause with respect to Plaintiff's PHRC's Complaint in late May of that year. (Deposition Testimony of Thomas Dick I, p. 35, lines 11-20). The Defendants could produce absolutely no writings concerning the elimination of Plaintiff's position prior to July of 2003 or any specific plan references regarding the elimination of the position prior to Thomas Dick's plan that was formulated in late June or July of 2003. (Deposition Testimony of Thomas Dick I, pg. 41, lines 6-9; Deposition Testimony of Meredith Tulli, p. 100, lines 6-13; p. 101, lines 15-18).

16. It is admitted only that Thomas Dick contends that Ms. Ellis' position was considered for elimination because that position worked exclusively administering the monthly payment plan. Nevertheless, a genuine issue of material fact exists as to whether Defendants, including Thomas Dick, eliminated Ms. Ellis' position as a result of the Defendants' animus toward her stemming from Darla's participation in protected employment activity, i.e. the filing of her Human Relations Complaint. (Plaintiff's Complaint, paragraphs 27-29). Thomas Dick admitted that the Plaintiff's position included handling short-term loans, handling bad debts, repayment schedules, answering general student accounts receivable questions, providing training, assisting with student account mailings, as well as other duties enumerated in the Plaintiff's job description, submitted herewith as Exhibit "J." (Deposition Testimony of Thomas Dick I, pgs. 16-23). Additionally, Thomas Dick confirmed that another employee, Tep Suttvireeson

5

handled the monthly payment plans. (Deposition Testimony of Thomas Dick I, p. 7, lines 13-16). Darla Ellis also assisted other employees with their duties, including Cheri Houston with a number of regular tasks. (Deposition Testimony of Cheri Houston, p. 12, lines 12-21). Additionally, Thomas Dick testified that he looked "at the work load as the work that the office has to perform and not each person." (Deposition Testimony of Thomas Dick I, p. 42, lines 16-18). Yet over the course of a year's development of the so called "decentralization plan," Mr. Dick waited until learning of the PHRC's finding of no cause regarding Darla's claims to prepare a report concluding that her position was no longer necessary.

17. Plaintiff disputes the statements made in this paragraph of Defendants' Statement. The goal of the decentralization was to provide the branch campuses with more control over student loan processing and enrollment and to provide more services and more flexibility to the students. (Deposition Testimony of Thomas Dick I, p. 33, lines 1-8; p. 39, lines 9-19). The primary concern for the branch campuses was to reduce debt collection by being able to take students out of classes before they got too far into the plan and had to pay. (Deposition Testimony of Thomas Dick I, p. 33, lines 9-14). Cost reduction or efficiency was not a concern, but was raised, ostensibly, as a concern by Thomas Dick in July 2003 for the first time. (Deposition Testimony of Thomas Dick, p. 39, lines 6-8, p. 36, lines 12-14). In fact, the only writing whatsoever that references the elimination of Darla Ellis' position was the July 2003 report of Thomas Dick. (Deposition Testimony of Meredith Tulli, p. 101, lines 1-18). The Defendants never considered any alternatives to eliminating Ms. Ellis' job in carrying out the decentralization plan. (Deposition Testimony of Thomas Dick I, p. 41, lines 14-16).

18.     Plaintiff denies that a formal decentralization plan was presented to the Human Resources department by Thomas Dick and Barbara Hutchinson in or about June 2003. In July of 2003, Mr. Dick and Ms. Hutchinson presented Ms. Tulli with Mr. Dick's report that referred to eliminating Ms. Ellis' position because Human Resources need to approve of such action. (Deposition Testimony of Meredith Tulli, p. 76, lines 6-19; p. 77, lines 2-3). The report could not have been prepared prior to July 2003 because it contained data from June 2003. (Deposition Testimony of Thomas Dick I, p. 35, lines 15-20).

19.     Plaintiff, Darla Ellis, denies that the position was eliminated as a result of the implementation of the decentralization plan. It is admitted only that the Defendants state that this was the case. Ms. Ellis relies on the facts stated throughout her Counterstatement of Facts as support for Plaintiff's challenge to Defendants' intent.

**Notification to Plaintiff of Elimination of Accounting Clerk Position**

20.     There is a genuine issue of material fact as to what the Defendants told Darla Ellis in late June or early July 2003 during a meeting she had with Defendants Dick, Hutchinson and Tulli. Defendant Tulli testified that the meeting took place sometime in July of 2003, after a report by Mr. Dick was generated. (Deposition Testimony of Meredith Tulli, p. 100, lines 5-25). Darla Ellis recalled that the Defendants notified her that they were thinking about eliminating her position but that she was not definitively told that this would be the case. (Deposition Testimony of Darla Ellis, pp. 73-74, lines 9-25; 1-16).

21. It is admitted that on July 29, 2003, correspondence was sent from Meredith Tulli to Darla Ellis informing her of her termination.

22. Darla Ellis admits only that Meredith Tulli discussed the potential for Darla to apply for one other potential position at HACC. (Deposition Testimony of Meredith Tulli, p. 102, lines 10-17).

23. It is admitted that HACC maintains an open job position listing at all times.

24. Darla Ellis denies that HACC's supervisory personnel "endeavored" to assist her in obtaining another position within the college. The Defendants cite no reference in the record other than that Darla Ellis was advised of one other position within the college for which she could apply.

25. It is admitted that Plaintiff would have been obliged to apply for any position she wished to obtain.

26. Plaintiff, Darla Ellis, disputes the Defendants' stated fact that she did not look for other employment after she was verbally notified that she was being terminated. Darla did not immediately start looking for a job because she didn't know if the termination was going to come to pass or not because the Defendants only told her they were thinking about terminating her position. (Deposition Testimony of Darla Ellis, p. 74, lines 10-16).

27. It is denied that Plaintiff does not recall whether she looked for other employment. After she received the written notification of her termination, Plaintiff looked around campus to see what kinds of jobs were available and found none. Additionally, Plaintiff had been told her termination would not take effect until more than

two (2) months later in October 2006. (Deposition Testimony of Darla Ellis, p. 54, lines 9-21).

28.     Plaintiff, Darla Ellis, admits that Defendant, Thomas Dick urged her to leave his department and take other employment. It is undisputed that this took place <u>after</u> Darla Ellis began complaining about taking classes during the day. (Deposition Testimony of Thomas Dick I, p. 62, lines 19-21). Plaintiff's complaint alleges that this occurred prior to Plaintiff's notification of her termination and the record is void of any facts to the contrary. (Plaintiff's Complaint, paragraph 27a). The date of this exchange is an open question of fact and Defendant Dick's motivation for doing so is at issue for the trier of fact to determine.

**Available Position in Credit Registration Department**

29.     It is admitted that Tisa Riley, the Director of Credit Registration, learned that Plaintiff's position was being eliminated. There are no facts of record as to when Ms. Riley learned this.

30.     It is admitted that Ms. Riley had previously interacted with the Plaintiff on a professional basis at HACC.

31.     It is admitted that Ms. Riley expressed an interest in hiring the Plaintiff for a position.

32.     Plaintiff admits that it is possible that she met informally with Ms. Riley in late May or early June 2003 to discuss the available technician position. However, it is not possible that Darla Ellis would have known that she was out of a job in the Student

Accounts Department at that time as the Defendants did not tell Darla Ellis about the potential elimination of her position and potential position in Ms. Riley's department until sometime in July of 2003. (Deposition Testimony of Meredith Tulli, pp. 100-102).

33. It is admitted that Plaintiff initially expressed interest in the position. However, Tisa Riley had informed the Plaintiff that it was her intention to make the position a "more managerial-type" position when she first spoke to Darla about it but ultimately that aspect of the position that was related to Darla Ellis at the time she originally expressed her interest was eliminated from the job description. (Deposition Testimony of Tisa Riley, p. 21, lines 1-9; pp. 47-48, lines 23-4; p. 49, lines 5-13; p. 51, lines 1-7).

34. Plaintiff, Darla Ellis, disputes the facts as stated in this paragraph. Ms. Riley did not advise the Plaintiff that she would be able to take classes during her lunch hour and that it was the policy that the employees in her department could do so. To the contrary, Ms. Riley discussed the *possibility* of Darla's taking classes and that Ms. Riley's policy on that subject had "gone back and forth." (Deposition Testimony of Tisa Riley, p. 21, lines 6-13).

35. Plaintiff, Darla Ellis, denies the facts stated in this paragraph and avers that there is a disputed issue of material fact. The proposed "supervisory authority" for the technician position in the Registration Department had been removed from that job description by the time Darla Ellis interviewed for the job. (Deposition Testimony of Tisa Riley, pp. 49-51). Additionally, the position was not graded at the initially intended level because the Vice President of the Finance Department, Chip Jackson, who oversaw both the Student Accounts and Registration Departments, didn't want the position to be

the same level as the dean's secretary. (Deposition Testimony of Tisa Riley, pp. 47-48, lines 19-4).

36.    Defendants statement of fact is disputed and raises an issue of material fact. The salary for the position that was actually posted was between $27,000.00-$30,000.00. (Deposition Testimony of Tisa Riley, p. 22, lines 6-12; Deposition Testimony Exhibit #14, Exhibit "K" -2). The proposed salary range is based on experience and the position requires four (4) years of related experience, knowledge of front page and supervisory experience being preferred. (Deposition Exhibit #14, submitted herewith as Exhibit "K"). Darla Ellis did not have four (4) years of related experience, did not have knowledge of front page nor did she have supervisory experience. Additionally, Darla Ellis had received an approximate four (4%) percent increase every year that she had worked in the Finance department and had previously been approved for the prior year to a salary of $26,452.00. (Deposition Testimony of Darla Ellis, pgs. 93-94).

37.    It is admitted that Ms. Riley posted the Technician position internally during the week of June 8, 2003.

38.    It is admitted that the internal job posting period closed on June 13, 2003. However, Darla Ellis was not informally notified that her position might be eliminated until early July of 2003 and was not formally advised until July 29, 2003. (Deposition Testimony of Meredith Tulli, pp. 100-102; p. 104).

39.    It is admitted that the Plaintiff did not apply for the Technician position during the internal posting period, as she already had a job at the College.

11

40. It is admitted that Ms. Riley posted the Technician position externally during the week of July 20, 2003. Darla Ellis was not definitely notified of her termination until after she received Defendant Tulli's letter dated July 29, 2003. (Deposition Testimony of Darla Ellis, p. 53, lines 18-20).

41. It is admitted only that Tisa Riley made a "mental note" that Darla Ellis did not apply for the position prior to the closing of the external posting. (Deposition Testimony of Tisa Riley, p. 23, lines 1-4). By the time the position was posted externally, the position materially differed from that originally expressed to Darla Ellis. (Deposition Testimony of Tisa Riley, pp. 49-51). Darla Ellis did not receive definitive notification of her termination until July 29, 2003 after the external posting had closed. (Deposition Testimony of Darla Ellis, p. 53, lines 18-20; Defendant's Undisputed Statement of Facts, paragraph 40).

42. It is admitted that the Plaintiff submitted her application for the Technician position.

43. It is admitted that Ms. Riley agreed to interview Darla Ellis. At the time she interviewed Darla Ellis, Tisa Riley didn't trust her and expressed an interest in hiring someone with whom she had worked directly and who rated more highly than any of the other interview candidates, including Darla Ellis. (Deposition Testimony of Tisa Riley, p. 23, lines 21-24; p. 32, lines 10-20; p. 27, lines 7-17).

44. It is admitted that that statement appears on the notes Ms. Riley took during the interview process.

45. It is admitted that Darla Ellis had no genuine interest in the Technician position by the time she interviewed because she did not have expertise in the position,

such that it would provide a reason for her supervisors to let her go from the college. (Deposition Testimony of Darla Ellis, p. 88, lines 6-14).

46. The statement by the Defendants in this paragraph is taken out of context and denied. The position referenced by the Defendants was a position in a Financial Aide Office early in Thomas Dick's tenure and long before any decision had been made to terminate Darla Ellis' employment from the Student Accounts departments. (Deposition Testimony of Thomas Dick I., pgs. 60-61, lines 19-17).

**Plaintiff's Last Day of Work**

47. It is admitted that Darla Ellis was involved in a verbal altercation with Thomas Dick on or about August 22, 2003.

48. It is admitted that the verbal altercation transpired after the Plaintiff learned that she no longer had access to the student loan payment program files on her computer. However, when Darla Ellis approached Mr. Dick regarding this situation, she was told that while she was away on vacation students have been dropped from the payment plan, without discussing the matter with her, she was going to be transferred to another area. (Deposition Testimony of Thomas Dick I, p. 66, lines 1-18). It was Thomas Dick who first became irritated and raised his voice and aggravated the situation further by physically blocking Darla's exit from his office. (Deposition Testimony of Thomas Dick I, p. 67, lines 20-1).

49. It is admitted that Darla left the office following the verbal abuse by Mr. Dick. The following Monday, Darla Ellis did return to HACC to meet with Meredith

Tulli who offered to have her undertake a data entry task in another department until October 3. Darla declined and Meredith Tulli presented her with a separation agreement indicating that HACC will pay her through October 3rd if she agreed to sign a release agreeing not to bring any legal claims against the college. (Deposition Testimony of Meredith Tulli, pp. 131-132).

**Plaintiff's Second PHRC Complaint**

50.    Darla Ellis filed a Human Relations Complaint with the PHRC on or about February 13, 2004 under Docket No. 2003-04841 against HACC, Thomas Dick, Meredith Tulli and Barbara L. Hutchinson alleging racial discrimination and retaliation by the respondents. The second complaint was simultaneously filed with the EEOC under Charge No. 17FA462008. (Clerk's Exhibit "I").

51.    It is admitted that in her second PHRC Complaint, Darla Ellis alleged that she was subject to repeated abuse and harassment by her supervisor, Thomas Dick and that the termination of the Complainant, Darla Ellis was a pretextual and concocted rational to cover the Respondents' termination of the Complainant, Darla Ellis, on the basis of a race and in retaliation for her participation and protected employment activities, including filing of her PHRC Complaint in February of 2003. (Clerk's Exhibit "I", paragraph 15-16).

52.    The PHRC never issued a finding of no probable cause concerning Darla Ellis' allegations. To the contrary, the PHRC administratively closed it's file because it had not come to any findings whatsoever within one (1) year of her filing and because

Darla Ellis had requested and had been granted a right-to-sue letter by the EEOC and the United States Department of Justice. (Clerk's Exhibit "L").

**Plaintiff's Specific Claims Against Meredith Tulli and Barbara L. Hutchinson**

53. It is admitted that Plaintiff stated that Meredith Tulli did not have any supervisory authority over her.

54. It is admitted that Darla Ellis has no knowledge as to whether Meredith Tulli knew that she had expressed in participating an on-campus Minority Caucus.

55. It is admitted that Plaintiff could provide no information to support a claim that she was subject to repeated abuse and harassment by Barbara Hutchinson or Meredith Tulli because of her race. Defendants do not dispute that Defendant's Hutchinson and Tulli took part and approved the decision to terminate Darla Ellis.

Respectfully submitted,

ARCHER & ARCHER, P.C.:

Dated: 10/31/2006

By: Thomas A. Archer /s/
Thomas A. Archer, Esquire
PA I.D. No. 73293
2515 North Front Street
PO Box 5056
Harrisburg, PA  17110
(717) 233-8676
tarcher@archerandarcher.com
*Attorney for Plaintiff, Darla Ellis*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served a true and correct copy of the foregoing document on all counsel of record via electronic filing on the date set forth as follows:

Sharon M. O'Donnell, Esquire
Marshall, Dennehey, Warner Coleman & Goggin
4200 Crums Mill Road, Suite B
Harrisburg, PA  17112
*Attorney for Defendants*

ARCHER & ARCHER, P.C.

Dated: 10/31/2006

By: Thomas A. Archer /s/
Thomas A. Archer, Esquire