**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARLA ELLIS,** | : | |
| | : | **Civil Action No. 1:05-CV-2466** |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **HARRISBURG AREA COMMUNITY** | : | |
| **COLLEGE; THOMAS DICK;** | : | |
| **MEREDITH TULLY;** | : | |
| **BARBARA L. HUTCHINSON,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court is an employment discrimination action by Plaintiff, who alleges that

Defendants violated her rights under Title VII and the Pennsylvania Human Relations Act

("PHRA") by retaliating against her for engaging in protected activity, specifically for making

complaints with the Pennsylvania Human Relations Commission ("PHRC") and the Equal

Employment Opportunity Commission ("EEOC").  Defendants have filed an amended motion in

limine seeking to exclude certain evidence and testimony during trial.  (Doc. No. 29.)  The

motion was also the subject of discussion between the Court and counsel for both parties during

the pretrial conference held in chambers on January, 23, 2007.  At the Court's request, the parties

submitted supplemental letter briefs addressing, inter alia, questions relating to the motion that

were raised during the pretrial conference.  (Doc. Nos. 34 & 36.)  For the reasons that follow, the

motion in limine will be granted in part and denied in part.

**I.      BACKGROUND**

Plaintiff, an African-American female, was previously employed with Defendant

Harrisburg Area Community College ("HACC") as an accounting clerk in the Student Accounts

Office from 1998 until her employment was terminated on August 25, 2003.  In this position, she

was responsible for maintaining the student loan deferred payment plan for students at all of

HACC's campuses.  Plaintiff also indicates that her job included handling short term loans, bad

debts, and repayment schedules, answering general student accounts receivable questions,

providing training, assisting with student account mailings, as well as assisting other employees

with their workload.  In addition to being employed by HACC, Plaintiff was a student enrolled in

various courses at the college.

On or about January 15, 2003, Plaintiff filed a complaint with the Pennsylvania Human

Relations Commission ("PHRC"), which was cross-filed with the Equal Employment

Opportunity Commission ("EEOC"), alleging that HACC had discriminated against her on the

basis of her race.  The PHRC issued a finding of no probable cause concerning the allegations of

the complaint on May 21, 2003.  All Defendants knew of the PHRC complaint, and after its

filing, Plaintiff's professional relationship with Defendant Dick allegedly soured.

On or about October 2002, Defendants Dick and Hutchinson and other HACC officials

began to engage in discussions about "decentralizing" the student loan deferred payment

program which was being administered exclusively by the Student Accounts Office in the

Harrisburg HACC campus.  One goal of this plan was to improve efficiency and customer

service for the students by having each of HACC's campuses assume responsibility for

processing the deferred student loan program for and on behalf of its own students.

A formal decentralization plan was presented to the Human Resources Department by

Defendants Dick and Hutchinson in June 2003.  In this plan, Defendants Dick and Hutchinson

recommended that Plaintiff's position be eliminated, a suggestion that was eventually

implemented.  Plaintiff received a letter from Defendant Tulli dated July 29, 2003, confirming

that Plaintiff's position was being eliminated effective October 3, 2003.  In part because of a

verbal altercation between Plaintiff and Defendant Dick at the end of August, Plaintiff was

offered a data entry task in another department until October 3, 2003.  Plaintiff declined and was

presented with a separation agreement indicating that HACC would pay her through October 3,

2003, if she agreed to sign a release of any and all legal claims against the college.  Plaintiff did

not sign the release, and her termination was effective August 25, 2003.

        Defendants represent that the decision to eliminate the position was based upon the fact

that Plaintiff's position exclusively handled the payment plan; however, Plaintiff contends that

this reason is pretexual.  She argues that the plan had been in the making for about a year prior to

any reference to the elimination of her position, contends that there was sufficient work to

maintain her position, and highlights that her position was the only position eliminated from the

finance department in a considerable period of time.  Plaintiff also points out that, around the

same time the decentralization plan was being discussed, the finance department conducted a

comprehensive reclassification of employee job descriptions, and she highlights that there was

no indication that her position was to be eliminated during this reclassification process.

        During the period after Plaintiff was informed her position was being eliminated, another

employee in the Student Accounts Office, Tep Suttivreeson, began taking greater responsibility

over the deferred loan program.  Mr. Suttivreeson became the primary person responsible for the

deferred loan program once Plaintiff no longer worked at HACC.

## II.    DISCUSSION

        Defendants seek to exclude the following: (1) certain exhibits; (2) evidence and

testimony pertaining to Cheri Houston and the grade/reclassification of her position; (3)

testimony related to allegations that allegedly fall outside of the scope of Plaintiff's prior PHRC

complaints; (4) evidence and testimony pertaining to the release agreement offered to Plaintiff

by Meredith Tulli; and (5) evidence relating to punitive damages.

**A.   Exclusion of exhibits and certain witness testimony**

Evidence is admissible at trial only if it is relevant, "except as otherwise provided by the

Constitution of the United States, by Act of Congress, by these, rules, or by other rules

prescribed by the Supreme Court pursuant to statutory authority."  Fed. R. Evid. 402.  Evidence

is considered relevant if it has "any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be

without the evidence."  Fed. R. Evid. 401.  The United States Court of Appeals for the Third

Circuit has noted that "Rule 401 does not raise a high standard" for determining that evidence is

relevant.  Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 109-10 (3d Cir. 1999.)  Even if

evidence is deemed relevant, it may nevertheless "be excluded if its probative value is

substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

misleading the jury, or by considerations of undue delay, waste of time, or needless presentation

of cumulative evidence."  Fed. R. Evid. 403.

**1.   Exhibits[1]**

Defendants have moved to preclude the introduction of numerous exhibits, primarily on

the basis that they are irrelevant and inadmissable under Rules 401, 402, and 403 of the Federal

---

[1]  The Court notes that the parties have not provided the exhibits for the Court's review and therefore the Court is relying on the party's representations of what the exhibits contain.

Rules of Evidence.  Defendants have also moved to preclude the introduction of annual reports for HACC from 2000-2005 on the basis that lay witnesses would be improperly called to provide opinion testimony that would be based upon expert, scientific, or specialized knowledge.

Defendants move to preclude to exhibit 9, Plaintiff's right-to-sue letter from the EEOC, and exhibit 133, a draft of the Student Accounting and Cashiering Document Imaging Strategic Plan.  Plaintiff does not object to the preclusion of these exhibits, and therefore the Court will grant Defendants' motion with respect to exhibits 9 and 133.

Defendants object to exhibits 119 and 120, Defendant Hutchinson and Tulli's Groupwise calendars.  They argue that the calendars are not relevant because, while they identify meeting times between Defendants, they do not specify the purpose of the scheduled meetings. Additionally, Defendants argue that the calendars contain irrelevant information, including personal entries, HACC operations, and privileged information relating to other employees. Plaintiff counters that these calendars may be relevant, for example, on cross-examination depending on the witnesses' testimony with respect to meetings that were allegedly held to discuss Plaintiff's termination.  The Court agrees that these calendars may be relevant to the instant dispute and will deny Defendants' motion in limine with respect to exhibits 119 and 120. As to Defendants' concerns regarding the privileged or private entries on the calendar, Plaintiff has indicated that she will redact specific entries if necessary.

Defendants have moved to preclude the use of exhibit 123, Plaintiff's wage records. Plaintiff's earnings, and proof thereof, would be relevant with respect to Plaintiff's request for damages and/or her alleged failure to mitigate damages.  This request to preclude this exhibit as irrelevant is denied.

Defendants contend that exhibit 124, wage records related to Tep Suttivreeson, is irrelevant because (1) Plaintiff has not alleged wage payment violations and (2) Mr. Suttivreeson was compensated at a lower rate of pay than Plaintiff.  The Court is unconvinced that the absence of a wage payment violation claim automatically renders these records irrelevant.  Like Plaintiff's wage documents, Mr. Suttivreeson's wage documents reflect the hours that he worked.  After Plaintiff's termination, Mr. Suttivreeson assumed primary responsibility for managing the student deferred payment plan.  Defendants have represented that Plaintiff's position was eliminated during the reorganization plan because there was not enough work to justify it.  Plaintiff intends to demonstrate that this reason is pretextual by showing the increased workload of Mr. Suttivreeson and calling into question whether he could have reasonably undertaking Plaintiff's job responsibilities as well as his own.  Based on this representation, the Court cannot at this time find these records to be irrelevant.  Defendants' motion will be denied with respect to this exhibit.

Plaintiff intends to use exhibit 131, which details HACC student enrollment data, to show that HACC enrollment has increased and to undercut Defendants' argument that diminished enrollees in the deferred payment plan at the Harrisburg campus justified the decision to eliminate Plaintiff's position.  Defendants challenge the relevancy of this exhibit because it fails to relate the number of enrollees to any of the job responsibilities assigned to Plaintiff.  If given proper context, such as competent testimony that the percentage of enrollees out of the total student body remained steady as the population increased, this information would tend to suggest that enrollees in the student deferred payment plan increased.  This, in turn, would support Plaintiff's showing of pretext – that Defendants' decision to eliminate Plaintiff's position was

6

not a result of insufficient work related to the deferred student payment plan at the Harrisburg

campus.  Defendants motion in limine to exclude exhibit 131 as irrelevant will be denied.

Defendants object to exhibit 134, the college bad debt report, which apparently identifies

the number of outstanding accounts across HACC in general terms without providing a break

down of outstanding accounts by campus.  Plaintiff argues that the "document reveals the

statistics concerning a major responsibility of Tep Suttivreeson, and is directly relevant to Mr.

Suttivreeson's ability to handle his existing job responsibilities in addition to those taken over

from Ms. Ellis."  Without a greater understanding of the exhibit itself and Mr. Suttivreeson's

responsibilities regarding the outstanding debt collection, the Court cannot determine whether

this exhibit will be relevant.  The Court will deny Defendants motion at this time.

Defendants object to exhibits 125-130, HACC's annual reports from 2000-2004.  They

contend that the reports are not relevant and that their use would call for lay witnesses to provide

opinion testimony that would be based upon expert, scientific, or specialized knowledge.

Plaintiff explains that the documents contain, inter alia, enrollment information and policies of

the college.  As discussed above, with the proper foundation, information and statistics about

enrollment would be relevant to Plaintiff's argument that the elimination of her position was

pretextual.  The Court is also unpersuaded that Rules 701 and 702[2] of the Federal Rules of

---

[2] Rule 701 of the Federal provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inference is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.  Rule 702 provides:

Evidence preclude the introduction of the annual reports.  Defendants themselves identified and

referred to the annual reports in their depositions and are competent to testify as to the meaning

of the documents and what they show.  Additionally, Plaintiff has explained that she "does not

intend to ask any witness to conduct any extravagant extrapolation from the numbers contained

therein or render any 'expert' opinion from those numbers" or ask the jury to "draw anything but

the most routine analysis with respect to what is presented to them, for the most part, whether the

numbers went up or down."  (Doc. No. 35, at 11.)  Defendants' motion in limine to exclude the

annual reports on the basis of relevancy and/or lay witnesses providing expert testimony will be

denied.

Defendants alternatively contend that, even if relevant, the abovementioned exhibits and

testimony relating to them would be highly prejudicial, confusing, and infringe upon judicial

economy.  Fed. R. Evid. 403.  At this time, the Court is unpersuaded by Defendants' conclusory

argument.

### 2.      Evidence and testimony pertaining to Cheri Houston and the reclassification of her position

Defendants argue that evidence and testimony pertaining to the reclassification of Cheri

Houston's position must be precluded from use at trial on the basis of relevance.  They contend

---

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

that a majority of the employees within the finance department were reclassified at the same time as Ms. Houston and that the fact of her reclassification does not bear upon Plaintiff's allegations of retaliation.  Plaintiffs argue that the reclassification procedure is directly relevant to Plaintiff's claim because there was never any plan to eliminate her position during the reclassification process.  Plaintiff does not, in any great detail, respond to Defendants' argument that Ms. Houston's reclassification in particular is irrelevant.  The Court has reviewed the deposition testimony of Ms. Houston and cannot say at this time that evidence regarding her reclassification is irrelevant to Plaintiff's case, particularly Plaintiff's assertion that her elimination was pretext for retaliation.  During Ms. Houston's discussion of her personal reclassification and the reclassification process more generally, Ms. Houston indicated that there was concern about her workload because she was performing the work of two separate positions even though her job description had not been modified to reflect these responsibilities.  Ms. Houston explained that Plaintiff frequently assisted her with her workload and noted that Defendant Dick was aware of her high workload as well as Plaintiff's assistance with the same.  (Houston Dep., Doc. No. 19-8, at 4-6.)  With the proper foundation, this testimony would be relevant to Defendants' contention that elimination of her position was justified because there was no work for Plaintiff to perform as an accounting clerk in the Student Accounts Office.  Moreover, the Court does not believe that this evidence is unduly prejudicial or confusing, nor can the Court say that the evidence is cumulative at this time.  Defendants' motion in limine on this point will be denied.

**B.** **Exclusion of testimony related to allegations allegedly falling outside the scope of Plaintiff's PHRC complaints**

While Defendants' motion in limine was pending, the Court ruled on Defendants' motion for partial summary judgment, in which Defendants argued that the allegations in paragraphs

27(c), (g), and (h) of the complaint were outside the scope of Plaintiff's PHRC complaints and

therefore must be stricken and/or dismissed as a matter of law.  In denying this part of the motion

for partial summary judgment, the Court concluded that the allegations in these paragraphs could

"reasonably have been expected to grow out of the investigation of Plaintiff's administrative

charges." (Doc. No. 37.)  Accordingly, the Court will deny Defendants request to preclude

evidence relating to the allegations in paragraphs 27(c), (g), and (h) on the ground that they are

outside the scope of the PHRC complaints.

### C.  Exclusion of evidence and testimony pertaining to the release agreement offered to Plaintiff

Defendants explain that on August 25, 2003, after the altercation between Plaintiff and

Defendant Dick, Defendant Tulli and Plaintiff met "for the purpose of reassigning Plaintiff to a

position within the Finance Department, but outside of the Student Accounts office for the

duration of her employment, October 3, 2003." (Doc. No. 30, at 21.)  After Plaintiff declined the

reassignment, Defendants explain that "[a]s is usual and customary, Plaintiff was offered a

Release Agreement which provided for full-payment of wages and benefits through October 31,

2003, and the opportunity for Plaintiff not to return to her position for the remainder of her

employment." (Id. at 21-22.)  The agreement provides for release of all claims against HACC.

Plaintiff declined to sign the release.

Rule 408 of the Federal Rules of Evidence provides, in relevant part:

> Evidence of (1) furnishing or promising to furnish, or (2) accepting
> or offering or promising to accept a valuable consideration in
> compromising or attempting to compromise a claim which was
> disputed as to either validity or amount, is not admissible to prove
> liability for or invalidity of a claim or its amount.

Fed. R. Evid. 408.  Although litigation need not be threatened at the time a release or

compromise is offered for Rule 408 to apply, the party seeking to invoke the rule must at least show that there is an actual dispute.  See Onal v. PB Amoco Corp., 135 F. App'x 515, 518 (3d Cir. 2005) ("Rule 408's 'exclusion applies where an actual dispute or difference of opinion exists. rather than when discussions crystallize to the point of threatened litigation.'") (quoting Affiliated Mfrs., Inc. v. Aluminum Co. Of America, 56 F.3d 421, 527 (3d. Cir. 1995).  Here, Defendants have not sustained their burden – they have not established that there was an actual dispute at the time the release was offered.  Based on Defendants' argument in their motion in limine it is not clear whether, prior to discussing the release, Plaintiff was even told that she was going to be terminated.  These questions regarding the timing of the release are strengthened by Defendant Tulli's deposition testimony that "nothing absolutely final had been decided at that point" when she had her August 25, 2003, conversation with Plaintiff.  (Tulli Dep., Doc. 19, Ex. C, at 18.)  Because Defendants have failed to sustain their burden of showing that an actual dispute existed at the time the release was offered, the Court need not address Plaintiff's arguments that the release is relevant and properly admissible on other grounds, such as to establish Plaintiff's termination date, to undercut Defendants' contentions that they were actively seeking to place her elsewhere in the college, or with respect to issues of mitigation of damages. Defendants motion in limine under Rule 406 to preclude evidence and testimony related to the release will be denied.

### D.    Evidence relating to punitive damages under the PHRA

Defendants moved to preclude introduction of punitive damages evidence on the ground that the PHRA does not permit a plaintiff to recover punitive damages.  Hoy v. Angelone, 720 A.2d 745, 748 (Pa. 1998); see 43 P.S. § 962(e)(3).  Plaintiff concedes that punitive damages are

not available under the PHRA.  Defendants motion in limine on this point will be granted.[3]

## III.    CONCLUSION

Defendants' motion in limine to preclude exhibits 9 and 133 will be granted.

Defendants' request to preclude evidence of punitive damages in relation to Plaintiff's PHRA

claim will be granted.  But see supra footnote 3.

In all other respects, Defendants motion in limine will be denied without prejudice to

Defendants' ability to challenge, inter alia, the relevancy of the following at trial: exhibits 119,

120, 123, 124, 125-130, 131, and 134; evidence and testimony pertaining to Ms. Houston's

reclassification; and testimony relating to the allegations contained in paragraphs 27(c), (g), and

(h).  Th Court's denial of this motion will also be without prejudice to Defendants' ability to

bring a properly supported objection to evidence and testimony concerning the release agreement

under Rule 408 at trial.

---

[3]  Unlike under the PHRA, Title VII expressly provides for the general availability of punitive damages upon a showing that the employer engaged with malice or reckless indifference to the federally protected rights of a plaintiff.  42 U.S.C. § 1981a(b)(1).  Because Defendants did not move to preclude evidence of damages with respect to Defendant HACC's alleged violation of Title VII, the Court will not address the issue in this Memorandum Opinion.

The Court inquired of the parties during the pretrial conference whether HACC, as a community college, fell into the class of defendants against which an award punitive damages may not be obtained.  42 U.S.C. § 1981a(b)(1) (specifically providing that punitive damages are not available against "a government, government agency, or political subdivision").  At the Court's direction (Doc. No. 32), the parties submitted letter briefs on whether Defendant HACC is a "government agency or political subdivision" against which punitive damages are not permitted under Title VII.  (Doc. Nos. 34 & 36.)  The Court will reserve ruling on the status of HACC at this time and address the issue with the parties at a later date.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARLA ELLIS,** | : | |
| | : | **Civil Action No. 1:05-CV-2466** |
| **Plaintiff** | : | |
| | : | **(Chief Judge Kane)** |
| **v.** | : | |
| | : | |
| **HARRISBURG AREA COMMUNITY** | : | |
| **COLLEGE; THOMAS DICK;** | : | |
| **MEREDITH TULLY;** | : | |
| **BARBARA L. HUTCHINSON,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

    **AND NOW**, this 6th day of February, 2007, upon consideration of Defendants' amended

motion in limine (Doc. No. 29) and Plaintiff's opposition thereto (Doc. No. 35), and for the

reasons set forth in the Court's Memorandum Opinion filed herewith, **IT IS HEREBY**

**ORDERED** that  Defendants' amended motion in limine is **GRANTED IN PART** and

**DENIED IN PART** as follows:

1.    Defendants' motion in limine to preclude exhibit 9, Plaintiff's right-to-sue letter,
      and exhibit 133, the student accounting and cashiering document imaging
      strategic plan, is **GRANTED**.  These exhibits shall not be introduced at trial.

2.    Defendants' motion in limine to preclude exhibits 119, 120, 123, 124, 125-130,
      131, and 134, is **DENIED** without prejudice to Defendants' raising these an other
      appropriate objections to the exhibits during trial.

3.    Defendants' motion in limine to preclude evidence and testimony pertaining to
      the Cheri Houston and the reclassification of her position is **DENIED** without
      prejudice to Defendants' raising these and other appropriate objections during
      trial.

4.    Defendants request to preclude evidence and testimony related to paragraphs
      27(c), (g) , and (h) of the complaint on the grounds that the allegations are outside
      the scope of Plaintiff's PHRC complaints is **DENIED**.

5.    Defendants' motion in limine to exclude evidence and testimony pertaining to the

August 25, 2003, release agreement will be **DENIED** without prejudice to Defendants to raise a properly supported objection on the same grounds at trial.

6.      Defendants' motion to preclude the introduction of punitive damages in relation to Plaintiff's PHRA claim is **GRANTED**.[4]


 s/ Yvette Kane_____
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania

---

[4]  The Court will defer ruling on whether punitive damages against HACC are available under Title VII, as addressed in the parties' letter briefs.  (Doc. No. 34 & 36); see supra footnote 3.